IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

JAMES THOMAS BEAN, Register No. 530524, )
)
                Plaintiff, )
)
                v. )        No. 06-4291-CV-C-SOW
)
DAVE DORMIRE, et al., )
)
                Defendants. )

## REPORT AND RECOMMENDATION

      In a lengthy complaint asserting allegations against numerous defendants, plaintiff alleges he failed to receive proper medical care while incarcerated, in violation of his constitutional rights. He claims defendant Raymond Bloomquist, D.O., failed to prescribe needed narcotic medication and failed to follow-up on the X-ray he ordered. Bloomquist filed a motion for summary judgment, pursuant to Fed. R. Civ. P. 56.[1] Plaintiff responded in opposition and defendant replied.

### Summary Judgment Standard

      Fed. R. Civ. P. 56(c) requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute on a material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op., 838 F.2d 268, 273 (8th Cir. 1988).

      Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of fact to be resolved at trial. Celotex, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly

---

[1]This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

probative, however, will not prevent entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact."  Hass v. Weiner, 765 F.2d 123, 124 (8th Cir. 1985).  In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts.  Robinson v. Monaghan, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," the court must grant summary judgment.  Fed. R. Civ. P. 56(c).

### Facts Relevant to the Claims Against Defendant Bloomquist

Plaintiff Bean has dislocated his left shoulder several times while he has been incarcerated.  As a result, he has suffered from chronic pain.  He dislocated it again in June 2005, and requested additional medical care for shoulder pain in November 2005.  On November 8, 2005, he saw Dr. Bloomquist.  The medical records for that date show plaintiff complained of severe pain and popping in his shoulder.  He told Bloomquist he had been assaulted by a corrections officer.[2]

Defendant Bloomquist states he has no independent recall of the medical encounter and has relied upon his medical records.  His records indicate he continued plaintiff on his previous pain killer of ibuprofen.  He also ordered an X-ray.

Plaintiff Bean asserts he told Bloomquist that ibuprofen was not working, and that he needed something stronger - a narcotic painkiller or muscle relaxer.  Plaintiff states Bloomquist made comments about other inmates wanting narcotics and that it was against institutional policy.  Plaintiff states Bloomquist was not responsive to plaintiff's request, acted angry and did not evaluate the severity of plaintiff's pain.

Bloomquist's medical records do not reflect a conversation about narcotics, so he does not affirm or contest plaintiff's recollection of the matter.  Bloomquist attests that requests for narcotic pain medication in the prison setting are not unusual, and there are policies in place that limit the occasions on which the medications are prescribed.  He states that nothing in the

---

[2]It is not clear whether the alleged assault occurred in June or in November.

2

November 8, 2005 medical note would have justified the use of narcotic pain medication on that date.

Plaintiff claims Bloomquist did not adequately examine him or otherwise evaluate his medical condition. Thus, plaintiff does not believe he received appropriate treatment.

Plaintiff's X-ray was scheduled for November 29, 2005, but he did not go to his appointment. He states he had an enemy[3] in the group and feared for his safety. Plaintiff states Bloomquist should have reordered the X-ray and otherwise followed up on plaintiff's condition.

Dr. Bloomquist was a physician on contract with a private company. The company, through its contract physicians, occasionally provided medical care to inmates when the regular physician was absent.[4] Thus, defendant's position at the institution was a temporary assignment.

He treated plaintiff on one occasion only, November 8, 2005, and believes the regularly employed physician returned to work at Jefferson City Correctional Center after that day. He has no recollection of being informed, prior to this lawsuit, that plaintiff did not receive his X-ray or had filed a grievance.

The medical records do not reflect that plaintiff completed a medical services request form related to his shoulder between November 8, 2005, and March 2006. Notations do show that for some period of that time, plaintiff indicated his shoulder wasn't hurting, but it continued to pop.

## Discussion

Here, plaintiff asserts his constitutional rights were violated when defendant failed to provide plaintiff with stronger pain medication and when defendant did not reschedule or otherwise follow-up on an X-ray defendant had ordered.

To succeed on his Eighth Amendment medical claim under 42 U.S.C. § 1983, plaintiff must allege and prove, by a preponderance of the evidence, a "deliberate indifference to a serious

---

[3]There is some indication that it was an undeclared enemy, and that plaintiff did not inform prison officials of his concern at the time.

[4]Defendant was a contract physician with a <u>locum tenens</u> physician placement corporation and was periodically placed at a Missouri correctional institution when doctors under contract with Correctional Medical Services, Inc., were on vacation or otherwise unavailable.

3

medical need." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Mere negligence is insufficient. Id. The standard for "deliberate indifference" includes an objective and a subjective component. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

Thus, to prevail on his claims, plaintiff must show 1) that the medical deprivation was objectively sufficiently serious; and 2) that defendant subjectively knew about the deprivation and refused to remedy it. A serious medical need is defined as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991)); see also Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997) (citing Camberos v. Branstad, 73 F.3d at 176).

When an inmate alleges a delay in medical treatment constituted a constitutional deprivation, the objective seriousness of the deprivation is also measured by reference to the effect of the delay in treatment. Coleman v. Rahija, 114 F.3d at 784 (citing Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997)); see also Beyerbach v. Sears, 49 F.3d at 1326. An inmate who complains that the delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Beyerbach v. Sears, 49 F.3d at 1326 (quoting Hill v. Dekalb Regional Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994)).

A mere difference of opinion between plaintiff and his treating physician about what treatment is appropriate does not give rise to a colorable claim under section 1983. Warren v. Fanning, 950 F.2d 1370, 1373 (8th Cir. 1991); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990); Courtney v. Adams, 528 F.2d 1056 (8th Cir. 1976). Likewise, disagreement with a diagnosis or course of medical treatment is insufficient to state a claim. Davis v. Hall, 992 F.2d 151, 153 (8th Cir. 1993). Nothing in the Eighth Amendment prevents doctors from exercising independent medical judgment. Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).

Defendant Bloomquist asserts he is entitled to qualified immunity because his actions were objectively reasonable under the facts, he exercised independent medical judgment, and he was not deliberately indifferent to plaintiff's serious medical needs.

4

Entitlement to qualified immunity is a question of law to be determined by the trial court. McIntosh v. Arkansas Republican Party, 856 F.2d 1185, 1186 (8th Cir. 1988); Warren v. City of Lincoln, 816 F.2d 1254 (8th Cir. 1987). Governmental employees are protected from suit by qualified immunity unless their conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800 (1982).

In Saucier v. Katz, 533 U.S. 194 (2001), the Court set forth a two-part analysis to be used when determining whether defendants are entitled to qualified immunity. The threshold question is "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." Id. at 201. The next step is to ask "whether the right was clearly established . . . in light of the specific context of the case." Id. at 201. The Court goes on to explain that "[t]he question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." Id. at 208.

Plaintiff does not dispute he saw defendant Bloomquist for medical care on only one occasion, November 8, 2005. Bloomquist continued him on ibuprofen and referred him for an X-ray. He also does not challenge the fact that defendant was an independent contractor with an outside company. That company separately contracted with CMS to provide temporary physician services while the physician regularly employed by CMS for inmate care at the institution was unavailable or on vacation.

The parties agree plaintiff was entitled to constitutionally adequate medical care and defendant was expected to exercise his professional medical judgment in determining what treatment, if any, was appropriate.

In continuing the pain medication plaintiff was previously prescribed and in ordering an X-ray to determine if something else needed to be done, Bloomquist acted according to what he reasonably understood his powers and responsibilities to be - to use his professional medical judgment to assess the needs and prescribe a treatment plan. He was also aware that there are policies within a prison facility that limit the occasions when narcotics are prescribed.

5

Plaintiff claims he was in pain, his pain medication was not strong enough, and he needed narcotics or muscle relaxants. Plaintiff also asserts defendant should have done more, including following up when the X-ray was not performed.

At this stage, the court gives plaintiff the benefit of all reasonable inferences from the facts. Plaintiff told Bloomquist he needed stronger pain medication and defendant responded to the request, but did not prescribe the requested drugs. Thus, defendant listened to plaintiff, had a discussion with him, determined an objective diagnostic tool should be used, and continued plaintiff on conservative treatment. Defendant had to have reviewed some of plaintiff's medical records to confirm what treatment had been given in the past and whether an X-ray had been done recently. These actions do not constitute deliberate indifference. Instead, plaintiff's allegations show he merely disagrees with the course of his treatment and with the evaluation done by defendant.

Plaintiff also claims that defendant should have rescheduled the X-ray. He has come forward, however, with no evidence that Bloomquist had any responsibility for plaintiff's follow-up care or the ability to follow-up when plaintiff did not have his scheduled X-ray taken. Plaintiff has not shown that defendant remained working at the institution in a capacity that would have given him any knowledge of the circumstances or any ability to address them.

Under these circumstances, defendant did not violate a constitutional right and is entitled to summary judgment. Accordingly, it is

RECOMMENDED that defendant Bloomquist's motion of November 20, 2007, for summary judgment be granted and plaintiff's claims against defendant Bloomquist be dismissed. [131]

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within twenty days. The District Judge will consider only exceptions to the specific proposed findings and recommendations of this report. Exceptions should not include matters outside of the report and recommendation. Other matters should be addressed in a separate pleading for consideration by the Magistrate Judge.

The statute provides for exceptions to be filed within ten days of the service of the report and recommendation. The court has extended that time to twenty days, and thus, additional time to file exceptions will not be granted unless there are exceptional circumstances. Failure to make

specific written exceptions to this report and recommendation will result in a waiver of the right to appeal.  See L.R. 74.1(a)(2).

Dated this 14th day of March, 2008, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge