# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

JAMES THOMAS BEAN, Register No. 530524,  )
  )
           Plaintiff,  )
  )
          v.  )     No. 06-4291-CV-C-SOW
  )
DAVE DORMIRE, et al.,  )
  )
          Defendants.  )

## REPORT, RECOMMENDATION AND ORDER

On January 29, 2008, medical defendants Correctional Medical Services (CMS), Jewel Cofield, Dr. Elizabeth Conley, Dr. Rex Hardman, Gerald Jorgenson, Jack Sulltrop, Wanda Laramore, Jeff Bolton, Susan Price, Kim Gordon, Deborah Lewis, Dr. Alfred Garcia, Lorna Rost and Ramona Wright filed motions for summary judgment. On March 6, 2008, Missouri Department Corrections (Corrections) defendants Tammy Reed, Hardy Crawford, Rodney Williams, David Jones, William Green, Nollie, Stan Keely, James Crosby, Raymond Jerozol, Mike Campbell, Saralynn McKinzie, Robert Abel, Tony Pridgeon, Ronald Wright, Bill Galloway, Arthur Wood, Dave Dormire, Steve Long, Tom Clements, Edward Ruppell, Paul Gore, Michael Slot, Marvin Smith, Debra Reed, Richard Corser, Nina Branson, John Meadows, Chad Hovis, Brad Cassidy, Glen Meador, Raydell Powell, Mershon Whitfield, Gene James, Jay Cassady, Kirk Wilson and Doug Wright filed a motion for summary judgment.[1]

Plaintiff has filed suggestions in opposition, including exhibits which are about five inches thick. Plaintiff's suggestions in opposition have been electronically filed; however, the exhibits are too large to be electronically filed and are being kept in paper form only at the Jefferson City Clerk's Office. Plaintiff has filed with the exhibits a motion seeking the court to provide, free-of-charge, based on his indigence, copies of these exhibits to each of the three separate defense counsel in the case. Paper-form-only exhibits are copied at a cost of ten cents a

---

[1]This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

page. Plaintiff's requested copies would cost hundreds of dollars to provide. Despite being granted in forma pauperis status, plaintiff is responsible for his own costs of litigation. Therefore, plaintiff's motion is denied. Defendants are advised that should they deem it necessary, they may view plaintiff's exhibits at the Jefferson City Clerk's Office.

## Summary Judgment

Fed. R. Civ. P. 56(c) requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute on a material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op., 838 F.2d 268, 273 (8th Cir. 1988).

Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of fact to be resolved at trial. Celotex, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." Hass v. Weiner, 765 F.2d 123, 124 (8th Cir. 1985). In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. Robinson v. Monaghan, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56(c).

## Background

On June 8, 2005, plaintiff injured his shoulder while stretching in bed. Plaintiff was seen by several medical and corrections personnel in the morning hours and was transported to and seen by Dr. Garcia at approximately 1:30 p.m. Dr. Garcia treated plaintiff for a dislocated shoulder and prescribed for plaintiff pain medication and ordered that he remain in the prison infirmary on 24-hour observation.

2

## Denial of Medical Care

Plaintiff acknowledges receipt of medical care for his shoulder by Dr. Garcia. However, plaintiff alleges that the medical care provided was inadequate, citing lack of proper care by Dr. Garcia in manipulating his shoulder and refusal to prescribe narcotic pain medication. Although plaintiff's complaint states that Dr. Garcia was very professional, doing his very best when he manipulated plaintiff's shoulder back into proper placement, plaintiff's filings in response to summary judgment allege that he has now become aware that the procedure used by Dr. Garcia was improper. Plaintiff states 1) Dr. Garcia should have used a sheet to manipulate plaintiff's shoulder, rather than the physical manipulation that was conducted; 2) X-rays should have been taken; and 3) he should have received something more than Valium, such as a narcotic pain medication, before Dr. Garcia manipulated plaintiff's shoulder. Plaintiff also states that the 800 mg. ibuprofen prescribed by Dr. Garcia after the manipulation of plaintiff's shoulder was insufficient. Plaintiff states that Dr. Garcia and/or other CMS personnel should have prescribed or obtained for him narcotic pain medication.

To succeed on his Eighth Amendment medical claims, plaintiff must allege and prove, by a preponderance of the evidence, a "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Prison officials may not be held liable under 42 U.S.C. § 1983 for mere negligence in the treatment of an inmate. Id. The standard for "deliberate indifference" includes an objective and a subjective component. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Thus, to prevail on his claims, plaintiff must show 1) that the medical deprivation was objectively sufficiently serious; and 2) that prison officials subjectively knew about the deprivation and refused to remedy it. A serious medical need is defined as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991)); see also Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997) (citing Camberos v. Branstad, 73 F.3d at 176).

A mere difference of opinion between plaintiff and his treating physician about what treatment is appropriate does not give rise to a colorable claim under section 1983. Warren v. Fanning, 950 F.2d 1370, 1373 (8th Cir. 1991); Smith v. Marcantonio, 910 F.2d 500, 502 (8th

3

Cir. 1990); Courtney v. Adams, 528 F.2d 1056 (8th Cir. 1976). Likewise, disagreement with a diagnosis or course of medical treatment is insufficient to state a claim. Davis v. Hall, 992 F.2d 151, 153 (8th Cir. 1993). Nothing in the Eighth Amendment prevents doctors from exercising independent medical judgment. Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).

Here, although plaintiff clearly disputes whether the care he received was proper, he has no evidence to support his allegations that defendant Dr. Garcia or other CMS medical staff were deliberately indifferent to plaintiff's shoulder that had become dislocated. The evidence shows that Dr. Garcia administered 5mg. of Valium to plaintiff and then carefully manipulated plaintiff's shoulder. Dr. Garcia subsequently ordered plaintiff to be assigned to the medical infirmary for 24-hour observation and that he receive prescription-strength 800 mg. ibuprofen for any pain or discomfort, and be provided a sling for his arm. The fact that plaintiff believed the ibuprofen was not sufficient and wanted to be prescribed a narcotic is only evidence that plaintiff disagreed with his course of treatment as ordered by his treating doctor.[2] There is no evidence to support that after manipulating a shoulder that has been come dislocated, a patient requires such strong pain medication that it must be in narcotic form. Plaintiff's own statements provide that although his shoulder has become dislocated on numerous occasions, he had never previously or subsequently been prescribed a narcotic pain medication. Further, plaintiff's allegations that 1) X-rays were immediately necessary, 2) physical manipulation by Dr. Garcia was improper, and 3) Dr. Garcia should have ordered physical therapy, have no evidence to support them. Plaintiff's medical records, and the affidavit of Dr. Garcia, show that plaintiff's allegations of deliberate indifference are nothing more than his disagreement with the medical care he received. Questions as to whether an X-ray or additional diagnostic techniques or forms of treatment should have been done are issues of medical judgment. Estelle, 429 U.S. at 293. At most, plaintiff's claims appear to be that of negligence which are not actionable under 42 U.S.C. § 1983. Estelle, 429 U.S. at 107.

Plaintiff's claims alleging defendants were deliberately indifferent when they transported him to medical on a backboard, rather than being provided a wheelchair, also fail to provide evidence of deliberate indifference. Plaintiff's allegation that defendants had plaintiff walk out

---

[2]Plaintiff is incarcerated on drug charges.

of his cell to be transported on a backboard or stretcher to medical for treatment fails to show deliberate indifference to his medical condition. Plaintiff's shoulder was injured and there is no evidence that he had anything wrong with his legs, or that his shoulder injury would have impaired his ability to walk. Plaintiff's claim that he preferred a wheelchair or that a wheelchair would have been easier for him, fails to show evidence of unconstitutional, deliberate indifference. Again, at most, plaintiff's claims are that of negligence.

Further, plaintiff has failed to come forward with evidence to support his claim that defendants were deliberately indifferent to his medical needs in November 2007 when he was scheduled for an X-ray of his shoulder, and defendants denied him the opportunity to be transported from administrative segregation to medical, separate from inmate Coats. Plaintiff had not declared Coats an enemy until the time he was scheduled to be transported to medical with Coats. The evidence shows defendants were attempting to escort plaintiff to medical for his X-ray, but that plaintiff, on-the-spot, declared Mr. Coats, also being transported to medical, as an enemy. All offenders in the group to be transported to medical were in handcuffs and leg restraints and thus, even if an enemy of plaintiff, Coats posed no threat. Plaintiff's refusal to attend the scheduled X-ray fails to show evidence of deliberate indifference by defendants.

Plaintiff also alleges that defendants, both CMS and Corrections, were deliberately indifferent to plaintiff's health, in violation of the Constitution, when they delayed his receiving medical care for his shoulder that had dislocated for a period of approximately eleven and one-half hours.

Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment or by prison doctors and medical staff who fail to respond to a prisoner's serious medical needs. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). When an inmate alleges a delay in medical treatment constituted a constitutional deprivation, the objective seriousness of the deprivation is also measured by reference to the effect of the delay in treatment. Coleman v. Rahija, 114 F.3d at 784 (citing Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997)); see also Beyerbach v. Sears, 49 F.3d at 1326. An inmate who complains that the delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the

5

detrimental effect of delay in medical treatment to succeed.  Beyerbach v. Sears, 49 F.3d at 1326 (quoting Hill v. Dekalb Regional Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994)).

Here, although plaintiff alleges he was unconstitutionally delayed treatment for a serious medical need, he comes forward with no evidence to support his claims.  When plaintiff was verbally yelling for help[3] at approximately 2:00 a.m., a corrections officer responded and checked him at 2:20 a.m., and stated to plaintiff, in response to his complaint that he was stretching and his arm got stuck, that he should try to relax and see if that would fix the problem. Subsequently, when plaintiff declared a medical emergency at approximately 4:30 a.m., he was seen by Nurse Jeff Bolton, who said "this is not a medical emergency," and advised plaintiff on how to relax and that it would be OK.  Plaintiff was again seen at 9:30 a.m. by Nurse Susan Price, who physically examined plaintiff and noted he had an alteration in comfort and mobility due to a possible left-shoulder injury.  Nurse Price advised plaintiff to try to move his arm and shoulder and get out of bed, and that she would check on him again during the noon medical pass and check with a doctor.  Nurse Price subsequently checked on plaintiff during her pass through administrative segregation while she passed out medical service request forms to the inmates. Plaintiff was seen at approximately 1:30 p.m. by the director of nursing, who referred plaintiff to medical for evaluation by a doctor.  Upon arrival at medical, plaintiff received treatment for his shoulder from Dr. Garcia.  The evidence supports that although plaintiff may have been uncomfortable between the time he first complained regarding his shoulder and when he was seen by Dr. Garcia that afternoon, the evidence does not support that he was suffering from a medical emergency or serious medical need requiring that he immediately be seen by a doctor for treatment.  Plaintiff affirms in his deposition that none of the medical personnel believed plaintiff had a serious medical condition or emergency.  The affidavit of Dr. Garcia provides the care provided by Nurses Bolton and Price was proper and that they acted appropriately within their scope and standard for providing treatment to plaintiff on June 8, 2005.  Dr. Garcia noted that nurses cannot prescribe treatment or medication, either over-the-counter or narcotic

---

[3]Plaintiff did not push his emergency button located in his cell.  The affidavit of Dr. Garcia provides there is no reason plaintiff could not have gotten up and pushed the emergency button.

6

medication without an order from a physician. Dr. Garcia further states it is not unreasonable for a physician to see plaintiff approximately ten hours after the first nurse saw him for a dislocated shoulder. In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating he feels he did not receive adequate treatment. Dulany, 132 F.3d at 1240. Moreover, plaintiff provides in his own statements that defendants did not believe he was suffering from a medical emergency; thus, the subjective requirement for deliberate indifference is not met. Additionally, even if the medical defendants were wrong in their assessment of plaintiff's shoulder condition, the resulting delay in plaintiff receiving medical care, at most, supports a finding of negligence, and therefore, is not actionable in a 42 U.S.C. § 1983 law suit. Estelle, 429 U.S. at 107. To the extent plaintiff alleges nonmedical defendants, such as corrections personnel and a dental assistant, failed to heed his requests for medical assistance in the morning hours of June 8, 2005, these defendants cannot be held liable for medical staff's diagnostic decisions and are entitled to rely on the medical expertise of CMS personnel who responded multiple times on the morning of June 8, 2005, to plaintiff's complaints of shoulder injury. Crooks v. Nix, 872 F.2d 800, 803 (8th Cir.1989).

Plaintiff's allegations of harm are that he suffered pain during the delay, and that his shoulder has subsequently become worse. In the face of evidence of numerous corrections and CMS affidavits providing that defendants did not believe plaintiff to be suffering from a serious medical condition, plaintiff's allegations, without more, are insufficient to evidence that he, in fact, was suffering from a serious medical condition. Moreover, plaintiff's medical records show him to not have been in distress when received at medical and provide 1) that his vitals did not reveal that he was in distress, 2) his breathing was normal, and 3) he was not sweating and did not have a fever. Further, the evidence is that plaintiff had previously dislocated his shoulder three times prior to June 8, 2005: in 1995 or 1996, his shoulder was dislocated due to automobile accident; in December 1997, his shoulder was dislocated at Farmington Correctional Center during altercation with another inmate; in 2003 or 2004 he dislocated his shoulder during altercation at his apartment. Plaintiff has dislocated his shoulder five times subsequent to the June 8, 2005 incident: in May 2006 while reaching under his bed; twice while relaxing in bed; and most recently, in July or August of 2007 while playing basketball, and then again three or

7

four days after the basketball incident while stretching in bed. Moreover, the undisputed evidence is that plaintiff usually does not require medical treatment for his shoulder when it becomes dislocated. Plaintiff has managed to adjust his shoulder himself back into place on numerous occasions beginning with the 1995 or 1996 automobile accident, and including all shoulder dislocations subsequent to the June 8, 2005 incident. This evidence shows the occurrence of a dislocated shoulder is not uncommon for plaintiff, and does not pose a medical emergency for him. Further, plaintiff's November 2006 X-ray results showed "negative for evidence of bony abnormality involving left shoulder." Finally, plaintiff's allegation that he needs surgery to his shoulder as a result of the June 8, 2005 incident is not supported by his medical records or otherwise.

Plaintiff has insufficient evidence to support claims that CMS or Corrections defendants believed he had an acute or escalating medical condition, and deliberately delayed his receiving treatment for it, or that the delays adversely affected plaintiff's prognosis. Sherrer v. Stephens, 50 F.3d 496, 496-97 (8th Cir. 1994); see also Givens v. Jones, 900 F.2d 1229, 1233 (8th Cir. 1990). At most, plaintiff's claims and evidence show possible improper medical judgment or negligence, which are not actionable in a 42 U.S.C. § 1983 claim. Estelle, 429 U.S. at 107.

### Excessive Force

Plaintiff claims that Corrections defendants used excessive force when they handcuffed him for transport from administrative segregation to medical for treatment of his shoulder. Plaintiff states that because he had a dislocated shoulder, he should have been restrained with plastic ties rather than regular handcuffs.

Prison officials may use force that is reasonable and necessary under the circumstances to achieve a legitimate penal objective. Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The "unnecessary and wanton infliction of pain," however, violates the Eighth Amendment. Id. at 319 (citation omitted). Thus, when a prisoner alleges prison officials used excessive force, the appropriate test is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 6 (1992). Prison officials act maliciously when they "undertak[e], without just cause or reason, a course of action intended to injure another"; they act sadistically when they "engag[e] in extreme or excessive cruelty." Howard v. Barnett, 21 F.3d 868, 872 (8th

8

Cir. 1994). In determining whether prison officials acted maliciously and sadistically for the purpose of causing harm, the fact finder should consider the threat the officials reasonably perceived, the need for force, the relationship between the need for force and the amount of force used, and the injuries inflicted. Id. at 871.

Prison officials are not liable under the Eighth Amendment simply because it appears, in retrospect, that they used an unreasonable amount of force. Whitley, 475 U.S. at 319; Jasper v. Thalacker, 999 F.2d 353, 354 (8th Cir. 1993). Courts should not interfere with prison administration unless officials have acted in bad faith or without any legitimate purpose. Stenzel v. Ellis, 916 F.2d 423, 427 (8th Cir. 1990).

An excessive-force plaintiff must suffer "actual injury." Dawkins v. Graham, 50 F.3d 532, 535 (8th Cir. 1995). Although serious injury is not required to show cruel and unusual punishment, Hudson v. McMillian, 503 U.S. 1 (1992), it is a factor that may be considered. Howard, 21 F.3d at 871. See also Dawkins v. Graham, 50 F.3d at 535 (an excessive-force plaintiff must show "actual injury," which is less than "significant injury").

Here, plaintiff has no evidence that he suffered any actual injury. Additionally, defendants have come forward with evidence that plaintiff was an administrative segregation inmate who had a history of mental illness and receiving major conduct violations for being involved in several assaults within the prison, thus providing a reasonable basis for concern requiring that he be appropriately restrained for transport to medical.

**Policy**

Plaintiff's allegation that the CMS policy relied upon by the prison's medical providers in denying him narcotic pain medication was illegal and in violation of his constitutional rights is unsupported by evidence. First, plaintiff has failed to come forward with any such alleged CMS policy. Moreover, even if such policy existed, the evidence shows that Dr. Garcia, plaintiff's treating physician, clearly states in his affidavit that he denied plaintiff narcotic pain medications based on his medical discretion as to the amount of pain medication plaintiff required, and not based upon any such policy of CMS. See White v. Farrier, 849 F.2d 322, 327 (8th Cir. 1988) (physicians are entitled to exercise their medical judgment).

## Grievances

Plaintiff's complaint identifies CMS and Corrections supervisory defendants who responded to his grievances regarding the June 8, 2005 incident, and alleges that they violated his constitutional rights. Supervisors cannot be held liable under section 1983 for an employee's unconstitutional actions. Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995); Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993); Givens v. Jones, 900 F.2d 1229, 1233 (8th Cir. 1990). Instead, a supervisor can be held liable only for personal involvement in a constitutional violation, or when his or her corrective inaction amounts to deliberate indifference or tacit authorization of the violation. Boyd, 47 F.3d at 968; Fruit v. Norris, 905 F.2d 1147, 1151 (8th Cir. 1990). A supervisor's mere involvement in the grievance process is insufficient to be actionable under 42 U.S.C. § 1983. Rowe v. Norris, 198 Fed. Appx. 579 (8th Cir. 2006) (involvement limited to denying grievance insufficient to impose liability). Further, it is well settled that a failure to properly investigate or respond to a prisoner's grievances is not actionable under section 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993). Supervisors are not liable under section 1983 for the actions of their subordinates unless the supervisors' deliberate indifference to the offensive conduct and failure to take adequate remedial action proximately caused the injury in fact that is alleged to have violated the plaintiff's rights. Cox v. Sugg, 484 F.3d 1062, 1066 (8th Cir. 2007). Here, plaintiff has failed to come forward with evidence that defendants' responses to his grievances, after-the-fact of the June 8, 2005 incident, proximately caused him any injury. Rather, the evidence shows defendants' actions regarding plaintiff were only in their supervisory capacities and/or involved merely responding to plaintiff's filed grievances, and therefore, plaintiff's claims fail as a matter of law.

## Conspiracy

Throughout plaintiff's complaint, he alleges defendants are participating in a conspiracy to deprive him of his constitutional rights. Complaints alleging conspiracy will not be sustained unless they are sufficiently specific. White v. Bloom, 621 F.2d 276 (8th Cir. 1980). Here, plaintiff fails to come forward with supporting evidence demonstrating "defendants directed themselves toward an unconstitutional action by virtue of a mutual understanding" to suggest a "meeting of the minds." Smith v. Bacon, 699 F.2d 434, 436 (8th Cir. 1983). Plaintiff's broad,

10

conclusory allegations, without evidence to support them, are insufficient to support a conspiracy claim.

## Conclusion

Plaintiff has failed to come forward with evidence sufficiently probative to overcome summary judgment. No reasonable jury could find for plaintiff based on the evidence presented.

In light of the above, CMS defendants' motion to dismiss and plaintiff's motion for summary judgment should be denied as moot.

IT IS, THEREFORE, ORDERED that plaintiff's motion requesting the court to provide copies of his exhibits free-of-charge is denied, and such exhibits will be held in paper form for view at the Clerk's Office in Jefferson City, Missouri. [156] It is further

RECOMMENDED that defendants' motions for summary judgment be granted and plaintiff's claims be dismissed. [148, 149, 158] It is further

RECOMMENDED that defendants' motion to dismiss and plaintiff's motion for summary judgment be denied as moot. [101, 142]

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within twenty days. The District Judge will consider only exceptions to the specific proposed findings and recommendations of this report. Exceptions should not include matters outside of the report and recommendation. Other matters should be addressed in a separate pleading for consideration by the Magistrate Judge.

The statute provides for exceptions to be filed within ten days of the service of the report and recommendation. The court has extended that time to twenty days, and thus, additional time to file exceptions will not be granted unless there are exceptional circumstances. Failure to make specific written exceptions to this report and recommendation will result in a waiver of the right to appeal. See L.R. 74.1(a)(2).

Dated this 11th day of April, 2008, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge

11